IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**EDDIE VELARDE, CHRIS ALCALA,**
**CHRIS ESQUIBEL, ROSS GARCIA,**
**JESSE MAESTAS, GABRIEL SANCHEZ,**
**JEROME SANCHEZ and JERRY VELARDE,**
**JOE A. HERRERA, JR., SHANNON TALENT,**
**and JAMES LAW,**

      **Plaintiffs,**

vs.                                                              No. CIV 01-0877 DJS/RLP

**RIO ARRIBA BOARD OF COUNTY**
**COMMISSIONERS, ALFRED MONTOYA,**
**MOISES MORALES and LORENZO J.**
**VALDEZ, JEROME SANCHEZ, in their**
**individual and official capacities,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment **[Doc. No. 50]**, filed February 2, 2004. Defendants move the Court for an order dismissing Plaintiffs' claims. Defendants claim Plaintiffs failed to present any evidence establishing that Defendants violated Plaintiffs' federal or state constitutional rights and failed to present any evidence establishing they are entitled to punitive damages. Having reviewed the parties' pleadings, the applicable law, and being fully apprised of the circumstances, the Court finds that Defendants' motion should be granted in part and denied in part.

## II.  Standard of Review

The Court will grant summary judgment when there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The movant carries the burden of establishing there are no genuine issues of material fact, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970), but may discharge its burden by showing there is an absence of evidence to support the non-movant's case, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the movant meets its burden, the burden shifts to the non-movant to demonstrate a genuine issue for trial on a material matter.  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  In making its summary judgment determination, the court looks at the pleadings and documentary evidence in the light most favorable to the non-movant, *Deepwater Invs., v. Jackson Hole Ski Corp.* 938 F.2d 1105, 1110 (10th Cir. 1991), and the movant must show beyond a reasonable doubt it is entitled to summary judgment, *Hicks v. City of Watonga, Okla.*, 942 F.2d 737, 743 (10th Cir. 1991).  However, once the burden shifts to the non-movant, that party may not rest on its pleadings but must set forth specific facts showing there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.  *Celotex Corp.*, 477 U.S. at 324.  However, "the mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  If the non-movant cannot make such a showing, after adequate time for discovery, summary judgment is mandated.  *Celotex Corp.*, 477 U.S. at 322.  The Court will consider Defendants' motion for summary judgment in light of these standards.

### III.  Factual Background

Plaintiffs are residents of the County of Rio Arriba, State of New Mexico.  Plaintiffs are also members of the Velarde Valley Volunteer Fire Department (Velarde Fire Department).  Defendant Board of County Commissioners of the County of Rio Arriba (the Board) is the duly authorized governing board of the County of Rio Arriba and has limited supervisory authority over the financial operations of the Velarde Fire Department.  At the time of the filing of this action, Defendants Alfredo Montoya and Moises Morales were Commissioners on the Board of County Commissioners, and Defendants Lorenzo J. Valdez and Jerome N. Sanchez were the County Manager and Fire Marshal for the County of Rio Arriba, respectively.

In approximately 1990, Emilio Naranjo was the head of the Democratic Party for the County of Rio Arriba.  Plaintiff Eddie Velarde and Defendant Alfredo Montoya opposed Mr. Naranjo and organized the Democrats for Progress.  Plaintiff Eddie Velarde and Defendant Montoya and other members of the Democrats for Progress agreed that, if they successfully challenged Mr. Naranjo's authority, they would disband the Democrats for Progress and rejoin the mainstream Democratic Party.

In 1991, the Democrats for Progress gained control of the Democratic Party.  Therefore, as agreed, Plaintiff Eddie Velarde resigned as President of the Democrats for Progress and rejoined the mainstream Democratic Party and became the precinct chairman for the County of Rio Arriba.  Plaintiff Eddie Velarde asked Defendant Montoya to abide by their agreement and disband the Democrats for Progress.  Defendant Montoya refused to disband the Democrats for Progress.  Defendant Montoya also ordered Plaintiff Eddie Velarde not to challenge his authority as the new head of the Democratic Party for the County of Rio Arriba and asked for his support.

3

Plaintiff Eddie Velarde refused to recognize Defendant Montoya's authority as the head of the Democratic Party for the County of Rio Arriba. Plaintiffs contend that Plaintiff Eddie Velarde's refusal to support Defendant Montoya as head of the Democratic Party for the County of Rio Arriba triggered the acts of retaliation that are the subject of this action.

According to Plaintiffs, on or about **June 22, 1998**, a forest fire engulfed the Osha region of the Carson National Forrest in and around Angel Fire, New Mexico (the Osha Fire). The town of Angel Fire requested assistance from the Velarde Fire Department. The Board of Directors of the Velarde Fire Department, including Plaintiffs Eddie Velarde, Chris Alcala, Chris Esquibel, Ross Garcia, Jesse Maestas, Gabriel Sanchez, Jerome Sanchez, and Jerry Velarde voted to dispatch members of its department to the town of Angel Fire to assist in the containment of the Osha Fire.

Plaintiff Eddie Velarde, as the assistant chief of the Velarde Fire Department, was responsible for ensuring the members of the Velarde Fire Department dispatched to the Osha Fire had adequate equipment, supplies, and materials to combat the fire. Additionally, Plaintiff Eddie Velarde was responsible for ensuring the Village of Velarde was adequately staffed to protect the village in the event a fire occurred while some of the members of the Velarde Fire Department were combating the Osha Fire.

As of **June 25, 1998**, the fire fighters had contained the Osha Fire. However, on **June 26, 1998**, the fire was again burning out of control. On **June 27, 1998**, Defendant Alfredo Montoya and Moises Morales, both member of the Board of Commissioners for the County of Rio Arriba, voted to dismiss Plaintiffs from the Velarde Fire Department based on their contention that

Plaintiffs left the Village of Velarde unprotected and without fire fighting services while they were dispatched to the Osha Fire. The third commissioner, Ray Tafoya abstained from voting.

Because the fire was considered a federal disaster and an emergency, Mike Needhammer with the United States Forest Service and Fire Chief Mike Elliot with the Village of Angel Fire requested the services of the Village of Velarde fire fighters. Thus, Plaintiffs were again dispatched to Angel Fire and participated in the containment of the Osha Fire.

On **June 29, 1998**, Fire Marshal Jerome N. Sanchez with the authority of the Board changed the locks at the Velarde Fire Department. Plaintiffs allege this act constituted the illegal dismissing of Plaintiffs from their positions with the Velarde Fire Department.[1] To support this action, the Board asserted that Plaintiffs left the Village of Velarde without adequate fire protection services while the crew was in Angel Fire. Plaintiffs allege this "unsubstantiated allegation" served as the basis for their termination.

Plaintiffs also contend that as members of the Velarde Fire Department they receive a pension through the Public Employees Retirement Association (PERA) for their work as firefighters either within the Village of Velarde or when dispatched to fires outside the village. As firefighters, Plaintiffs are also compensated at a rate of $10.00 per hour for fighting fires outside the Village of Velarde. Plaintiffs claim they completed the necessary forms required by the New

---

[1] On August 2, 2002, the Court entered its Memorandum Opinion and Order **[Doc. No. 30]**, dismissing "any claims accruing prior to July 31, 1998." Therefore, the Court found the following claims barred by the statute of limitations: (1) Plaintiffs' claim that on June 27, 1998, two members of the Board voted to dismiss them from the Velarde Fire Department; and (2) Plaintiffs' claim that on June 29, 1998, one of the individual defendants changed the locks at the Velarde Fire Department thereby "illegally dismissing" them. *See also,* September 24, 2002 Memorandum Opinion and Order (addressing Plaintiffs' Motion to Reconsider and reinstating ¶¶ 29, 30, and 40 of Plaintiffs' Complaint).

Mexico State Forestry Division so that they could be compensated for the time spent fighting the Osha Fire.  Plaintiffs submitted the completed forms to the Board for submission to the Forestry Division.  However, Plaintiffs were never compensated because the Board and the individual defendants failed to timely submit Plaintiffs' paperwork to the State Forestry Division.

In **July 1998**, Plaintiffs Eddie Velarde, Chris Alcala, Chris Esquibel, Ross Garcia, Jesse Maestas, Gabriel Sanchez, Jerome Sanchez, and Jerry Velarde filed a Petition for Temporary Restraining Order against, among others, the Board and Defendant Jerome N. Sanchez in the First Judicial District Court for the State of New Mexico.  During the pendency of this action, the parties to that action agreed to vacate the Board's termination of the plaintiffs and grant plaintiffs a due process hearing before a hearing officer agreed upon by both parties.  The parties selected Kimball Udall of Sommer, Fox, Udall, Othmer & Hardwick, P.A.

The due process hearing took place on **September 28 and 29, 1998**.  Immediately before the commencement of the due process hearing, the Board, through its attorney, offered to withdraw, *ab initio,* the termination of Plaintiffs Chris Alcala, Chris Esquibel, Ross Garcia, Jesse Maestas, Gabriel Sanchez, Jerome Sanchez, and Jerry Velarde and to formally reinstate these Plaintiffs as firefighters with the Velarde Fire Department at the Board's October meeting.  However, the Board would not withdraw the termination of Plaintiff Eddie Velarde and thus proceeded with the due process hearing.

Plaintiffs presented live witness testimony and documentary evidence to Mr. Udall.  At the conclusion of the due process hearing, Mr. Udall took the issues under advisement.  Before Mr. Udall rendered his decision, the parties discussed the possibility of a settlement.  The parties failed to reach a settlement agreement because the Board mandated Plaintiff Eddie Velarde resign as a

firefighter with the Velarde Fire Department as a condition of any settlement agreement. Plaintiffs rejected the offer and no further settlement negotiations took place.

On **December 30, 1998**, Mr. Udall rendered his written decision opining the Board had terminated Plaintiff Eddie Velarde without just cause. Defendants filed a Notice of Appeal in state district court challenging Mr. Udall's decision. Subsequently, Defendants dismissed their appeal. Nonetheless, Defendants never withdrew the termination of Plaintiffs Chris Alcala, Chris Esquibel, Ross Garcia, Jesse Maestas, Gabriel Sanchez, Jerome Sanchez, and Jerry Velarde and never reinstated these Plaintiffs as firefighters with the Velarde Fire Department at the Board's October meeting.

Plaintiffs contend the Board and the individual defendants intend to dismiss them and appoint a new Velarde Fire Department in retaliation for Plaintiffs exercising their First, Fifth and Fourteenth Amendment rights to free speech and free association. Plaintiffs further contend the Board and the individual defendants refuse to recognize the legitimacy of the officers and directors of the Velarde Fire Department even though they were elected pursuant to the Velarde Fire Department's By Laws. Under the Velarde Fire Department By Laws, the positions of Fire Chief and the members of the Board of Directors are elected positions, subject to the vote of the volunteer members of the Velarde Fire Department. Plaintiffs allege defendants have installed officers and directors who follow Defendant Montoya's political agenda.

On **May 7, 2000**, a forest fire engulfed the Cerro Grande region of the Santa Fe National Forest near Los Alamos, New Mexico (the Cerro Grande Fire). The City of Los Alamos Fire Department and the Los Alamos National Laboratory and Risk Management Division requested the assistance of the Velarde Fire Department. Plaintiffs followed Velarde Fire Department

procedures and were dispatched to the Cerro Grande Fire.  Prior to being dispatched to the Cerro Grande Fire, Plaintiffs tried unsuccessfully to contact Defendant Sanchez to tell him they were being dispatched to fight the Cerro Grande Fire.

Plaintiffs fought the Cerro Grande Fire for approximately seven days at an average of 15 hours per day and, during the time they were on call, on a 24 hour basis.  During the seven days Plaintiffs fought the Cerro Grande Fire, defendants never informed Plaintiffs that they were in violation of any rules, regulations or procedures of the Board.  Plaintiff sought compensation for their firefighting time during the Cerro Grande Fire and prepared and submitted the necessary paperwork to Mr. Jerry Wheeler of the New Mexico Fire Fighters Academy.  At Mr. Wheeler's request, Plaintiffs also submitted a copy of their paperwork to Defendant Sanchez.

Based on conversations with officials from the Los Alamos National Laboratory, Plaintiffs contend that the Board received money under the Federal Emergency Management Act (FEMA) to compensate firefighters from throughout the County of Rio Arriba, including Plaintiffs, for services rendered at the Cerro Grande Fire. The Board paid members of fire districts throughout the County of Rio Arriba who participated in the Cerro Grande Fire except for Plaintiffs. Plaintiffs requested the assistance of Defendant Sanchez, the Fire Marshal for the County of Rio Arriba, in procuring compensation for their work on the Cerro Grande Fire.  Defendant Sanchez told Commissioner Ray Tafoya and Plaintiff Alcala that he refused to pay the Plaintiffs or otherwise assist them in procuring their just compensation.  Thereafter, Plaintiffs filed a Notice of Tort claim against defendants for retaliation and for failure to compensate Plaintiffs as required by law.

Plaintiffs contend the Board and the individual defendants continue to retaliate against them for their refusal to follow the political agenda of Defendant Montoya and the other named individual defendants and for engaging in constitutionally protected activity, their right to political association and free speech. Plaintiffs further contend that the individual defendants' continued retaliation against them threatens the safety of the Village of Velarde and the people of the State of New Mexico because, in the event of a fire within the village or on State land, there would be no cohesive fire department to respond or contain the fire.

### III.  Discussion

"Where a government employer takes adverse action on account of an employee's political association and/or political beliefs, [the Court] appl[ies] the test as developed in the *Elrod v. Burns*, 427 U.S. 347 (1976)(plurality opinion), and *Branti v. Finkel*, 445 U.S. 507 (1980) line of cases." *Jantzen v. Hawkins*, 188 F.3d 1247, 1251 (10th Cir. 1999). *Elrod* and *Branti* established "that patronage does not justify the coercion of a person's political beliefs and associations." *Id.* at 718. "Where a government employer takes adverse action because of an employee's exercise of his or her right of free speech, [the Court] appl[ies] the balancing test from *Pickering v. Board of Educ.,* 391 U.S. 563 (1968), and *Connick v. Myers*, 461 U.S. 138 (1983)." *Id.*

#### A.  Freedom of Association

"Government officials may not discharge public employees for refusing to support a political party or its candidates, unless political affiliation is a reasonably appropriate requirement for the job in question." *O'Hare Truck Service, Inc. v. city of Northlake*, 518 U.S. 712, 714 (1996). Moreover, adverse personnel action other than dismissal also violates the First Amendment. *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 75 n.8 (1990). To defeat

9

Defendants' summary judgment motion, Plaintiffs must establish a genuine dispute of fact that (1) political affiliation and/or beliefs were "substantial" or "motivating" factors behind their dismissals and the alleged retaliatory acts by defendants; and (2) Plaintiffs' respective employment positions did not require political allegiance. *Barker v. City of Del City*, 215 F.3d 1134, 1138 (10th Cir. 2000). In this case, defendants do not argue that Plaintiffs' positions as volunteer firefighters require political allegiance. Thus, Plaintiffs need only show that their political affiliation and/or beliefs were substantial or motivating factors behind defendants' retaliatory acts.

Plaintiffs allege that defendants terminated them without cause for their political beliefs. Plaintiffs also allege the following retaliatory acts: (1) Defendant Sanchez refused to approve their request for payment for fighting the Osha Fire; (2) Defendant Sanchez, the Board and Defendants Morales, Valdez, and Montoya refused to assist them with the paperwork required in order for Plaintiffs to get paid for their participation in the Osha Fire and the Cerro Grande Fire; (3) Gilbert Silva,[2] with the approval of the Board and Defendants Morales, Valdez, and Montoya, submitted inaccurate or incomplete records to the PERA thus denying Plaintiffs of their PERA benefits under the Volunteer Firefighters Retirement Fund; (4) the Board and Defendants Montoya, Morales, and Valdez refused to recognize Plaintiffs as firefighters and informed central dispatch that the county would only recognize Paul Sanchez, Geraldine Martinez-Sanchez and Gilbert Silva as firefighters for the Velarde Fire Department; (5) Gilbert Silva, the unelected chief of the Velarde Fire Department (Plaintiff Velarde was elected chief by all members of the Velarde Fire

---

[2] On December 6, 2001, the Court entered an Order Granting Plaintiff's Motion to Amend. In that Order, the Court granted Plaintiffs ten (10) days from the entry of the December 6, 2001 Order to amend their Complaint to join Gilbert Silva as a defendant. Plaintiffs failed to do so.

Department and the Board) and the only chief recognized by the Board and Defendants Montoya, Morales, and Valdez, scheduled meetings and fire drills without informing Plaintiffs; and (6) the Board and Defendants Montoya, Morales, Valdez, and Sanchez have refused to respond to Plaintiffs' letters expressing their concerns regarding the Velarde Fire Department and requesting new equipment and repairs for the fire trucks.

On the other hand, Defendants contend that "Plaintiffs were not compensated for their participation in the Osha Fire because they did not have authorization from Defendant Jerome Sanchez in violation of the state statute." Defs.' Mem. in Supp. of Mot. for S.J. at 5, Undisputed Fact 18. Defendants argue that "[p]ursuant to New Mexico State Statute, §59A-53-17, Mutual Assistance, Plaintiffs must obtain authorization from the County Fire Marshal (Defendant Jerome Sanchez) prior to rendering assistance to another independent fire district." *Id.*, Undisputed Fact 12. Defendants also contend "Plaintiffs were not compensated for the Cerro Grande Fire, because they did not seek or receive authorization from Defendant Jerome Sanchez as required by state statue . . ." *Id.*, Undisputed Fact 25.

Defendants also argue that "[b]enefits under the State of New Mexico PERA are administered by the State of New Mexico," and "Defendants do not participate in the administration of the PERA program or in the distribution of PERA benefits." *Id.*, Undisputed Facts 6, 9. According to defendants, "any interference with Plaintiffs' PERA benefits are either a result of Plaintiffs' failure to meet the yearly statutory criteria or a result of their fire chief's failure to properly or timely submit the Plaintiffs' records of attendance." *Id.*, Undisputed Fact 9.

Plaintiffs dispute defendants' allegations and submitted evidence to show that prior to 1998 they were not required to seek permission from the Fire Marshal of the County of Rio Arriba

11

before responding to "out of district fires." Pls.' Resp., Ex. A (Affidavit of Eddie Velarde); Ex. G. Prior to 1998, the Velarde Fire Department "had always responded to out of district fire calls pursuant to the Mutual Aid Agreement entered into by and between the Fire Chiefs for each of the fire districts within Rio Arriba County and the Fire Departments for the surrounding counties of Taos, Santa Fe, San Juan, Los Alamos and Colfax." Pls.' Resp. at 4. State Fire Marshal George Chavez testified at Plaintiff Velarde's due process hearing that an independent fire district can respond to an out of district fire "with the appropriate authorization" "**or** a mutual aid agreement in place." *Id.* Notably, State Fire Marshal Chavez testified that the Mutual Aid Agreement in place at the time of the Osha Fire was proper authorization for the Velarde Fire Department to respond to a request to assist in the Osha Fire. *Id.* When Plaintiffs responded to the Cerro Grande Fire, they did so because the County of Los Alamos was a party to the Mutual Aid Agreement. Pls.' Ex. A, ¶ 24.

Plaintiffs also submitted affidavits from firefighters from the Truchas Fire Department and Alcalde Fire Department, both fire departments are within the County of Rio Arriba.[3] Pls.' Ex. D. Some of these firefighters have been with their respective fire departments since 1980. These firefighters attest to responding to out of district fires prior to 1998 and thereafter pursuant to a Mutual Aid Agreement and to the fact that the County of Rio Arriba has always assisted them in getting compensation for their participation in out of district fires. One affiant is a member of the

---

[3] In their Reply, defendants contend these affidavits should be stricken or disregarded for failure to conform with the requirements set forth in Fed.R.Civ.P. 56(e). Under Rule 56(e), [s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e); *see also*, *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir.1995). The affidavits in question meet this standard. Accordingly, the Court will not strike them.

Velarde Fire Department and attested to the fact that he has always been compensated for participation in out of district fires, including those to which he responded without prior authorization of the County of Rio Arriba. Campion Aff. ¶ 7. Plaintiff Alcala attested that "[f]ollowing the Cerro Grande Fire I personally approached Defendant Sanchez and asked him if he would help us with obtaining compensation for the work we did at the Cerro Grande Fire. He specifically told me that he would not help us." Alcala Aff. ¶ 7 . Another firefighter not a party to this action attested that the had "personally approached Defendant Sanchez and asked him if he would help us with obtaining compensation for the work we did on the Cerro Grande Fire. He specifically told me he would not help us." Quintana Aff. ¶7.

Plaintiffs also submitted a letter written by Defendant Montoya. Pls.' Ex. F. In this October 16, 2002 letter to Representative Debbie Rodella, Defendant Montoya called Plaintiffs "politically motivated mal-contents." Defendant Monotya refused to place Plaintiffs on the Commission's agenda stating that as Chairmen "he was not willing to provide a bully pulpit" for them.

An October 2, 2002 letter written by Defendant Sanchez to State Fire Marshal Chavez, tends to support Plaintiffs' allegations that in the fall of 2002 defendants informed central dispatch that they would only recognize three individuals as members of the Velarde Fire Department. Pls.' Ex. E. In that letter, Defendant Sanchez states, "In my opinion Fire Chief Gilbert Silva's attempts at recruiting functional firefighters have been thwarted by a group whose sole intent is to cause them to fail. Membership available for response under Fire Chief Silva is limited to insufficient numbers of responders . . . ." *Id.*

13

Because Plaintiffs have presented sufficient evidence to create a genuine issue of fact regarding whether their political affiliation and/or beliefs were "substantial" or "motivating" factors behind their dismissals and the alleged retaliatory acts by Defendants, the Court finds that summary judgment is precluded.

### B. Freedom of Speech

To determine whether defendants have infringed Plaintiffs' freedom of expression, the Court employs the four-part *Pickering/Connick* test:

(1) Whether the speech in question involves a matter of public concern.

(2) If so, we must weigh the employee's interest in the expression against the government employer's interest in regulating the speech of its employee so that it can carry on an efficient and effective workplace.

(3) Employee must show the speech was a substantial factor driving the challenged governmental action.

(4) If so, can the employer show that it would have taken the same employment action against the employee even in the absence of the protected speech.

*Jantzen*, 188 F.3d at 1257. The first two questions are ones of law for the court, while the latter two questions are ones of fact for the jury. *Id.*

Under the first prong of the *Pickering/Connick* test, a government employee's speech is of public concern and entitled to First Amendment protection if it is "'of interest to the community, whether for social, political, or other reasons.'" *Horstkoetter v. Dep't of Public Safety*, 159 F.3d 1265, 1271 (10th Cir. 1998)(quoting *Lytle v. City of Haysville*, 138 F.3d 857, 863 (10th Cir. 1998). Plaintiffs' Third Claim for Relief in their Complaint states, "Defendants' retaliatory actions

relating to plaintiffs' speech on matters of public concern constitute a violation of plaintiffs' rights under the First and Fourteenth Amendments of the U.S. Constitution." Compl. ¶ 66. Contrary to defendants' assertion, the Court did not dismiss this claim. Plaintiffs contend defendants retaliated against them for speaking out and sending numerous letters expressing their concerns regarding the safety of the people of Velarde due to a lack of safe and operable fire fighting equipment. Plaintiffs also contend they organized town meetings in the Village of Velarde for the citizens to express their concerns about their fears in case of a fire emergency. Plaintiffs speaking out regarding the safety of the people of Velarde due to the condition of the Velarde Fire Department is undoubtedly speech relating to matters of public concern.

Under the second prong of the *Pickering/Connick* test, Plaintiffs must show that their interest in expression outweighs the government employer's interest in regulating their speech. In this case, Plaintiffs' interest in speaking out regarding the deteriorating condition of the Velarde Fire Department outweighs defendants' interest in regulating it. Accordingly, defendants' motion for summary judgment as to this claim is denied.

### C.  Violation of Due Process

Pursuant to 42 U.S.C. §1983, Plaintiffs allege defendants conspired to violate their due process rights and conspired to retaliate against them for exercising their rights under the First and Fourteenth Amendments. Defendants contend Plaintiffs must prove an actual deprivation of rights in order to recover under §1983. Defs.' Mem. in Supp. at 19. Because genuine issues of material fact exist as to whether defendants deprived Plaintiffs of their right to compensation for their participation in the Osha Fire and the Cerro Grande Fire and whether defendants interfered with Plaintiffs' benefits under PERA, summary judgment is precluded as to this claim.

Defendants also argue that Plaintiffs' claims under 42 U.S.C. § 1985 fail because Plaintiffs have failed to show "some racial or otherwise class-based invidious discrimination. *Id.* at 17. Although some circuits do not require "competent evidence of some racial or other class based invidious discriminatory animus behind defendants' actions," the Tenth Circuit does so require. *See, Brown v. Reardon*, 770 F.2d 896, 905-06 (10th Cir. 1985)("The Supreme Court has, in our view, consistently required a showing of a class-based animus in order to establish a §1985 action."). Accordingly, the Court will grant defendants' motion for summary judgment as to Plaintiffs' §1985 action.

### D.  Punitive Damages

Defendants argue that "[to] survive a motion for summary judgment on the issue of punitive damages, Plaintiffs must come forth with evidence that Defendants 'acted with a culpable mental state, or evil motive, that rose to a level of conduct that was willful, malicious, reckless, oppressive or fraudulent.'" Defs.' Mem. in Supp. of Mot. for S.J. at 21. In *Hardeman v. City of Albuquerque*, 377 F.3d 1106 (10th Cir. 2004), the Tenth Circuit rejected a similar argument, stating:

> The defendants rely on *Guides, Ltd. v. Yarmouth Group Property Management, Inc.*, 295 F.3d 1065, 1077 (10th Cir. 2002), for the proposition that the standard for punitive damages in actions claiming a federal civil rights requires that the discrimination must have been malicious, willful, *and* in gross disregard of the rights of the plaintiff. The district court correctly rejected that standard, holding that a defendant's conduct does not have to be knowing or willful to support an award of punitive damages in a §1983 action.
>
> Punitive damages are available in §1983 actions [and] are to be awarded only when the defendant's conduct is shown to be motivated by evil motive or intent, *or* when it involves reckless or callous indifference to the federally protected rights of others. The focus must be on whether the defendant's actions call for deterrence and punishment over and above that provided by compensatory awards.

16

*Id.* at 1120 (internal citations and quotation marks omitted). Applying this standard, the Court finds that Plaintiffs have alleged sufficient facts that, if proven, would meet the standard of recklessness or callous indifference to Plaintiffs' First and Fourteenth Amendment rights. Additionally, Plaintiffs' allegations "appear to reflect actions that *should* be deterred and punished." *Id.* at 1121. Accordingly, Defendants' motion for summary judgment as to this claim is denied.

**NOW, THEREFORE,**

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is denied as to all of Plaintiffs' claims except for Plaintiffs' claims under 42 U.S.C. § 1985.

**IT IS FURTHER ORDERED** that Plaintiffs' 42 U.S.C. §1985 action is dismissed with prejudice.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**

17